UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KATHERINE M. McKIBBEN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:13-CV-1560 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ODD FELLOWS HEALTH, INC., | : | |
| Defendant. | : | JULY 25, 2014 |
| | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS (Doc. No. 22)**

Plaintiff Katherine M. McKibben brings this suit against her former employer, defendant Odd Fellows Healthcare, Inc.,[1] ("Odd Fellows"), for terminating her employment.  The Complaint (Doc. No. 1) alleges that Odd Fellows is liable for discrimination under Title VII, retaliation for activity protected under Title VII, and for a number of violations of state law.   Odd Fellows filed a Motion to Dismiss (Doc. No. 22).  For the reasons that follow, the court **GRANTS** the Motion to Dismiss with prejudice as to the plaintiff's only claims that appear to arise under federal law and dismisses all other claims, without prejudice, for lack of subject-matter jurisdiction.[2]

**I.      FACTS**[3]

For more than 18 months, Katherine M. McKibben got along well as a nurse's

---

[1] The plaintiff appears to have misnamed the defendant in the Complaint. The defendant's name is "Odd Fellows Healthcare, Inc."

[2] The defendant also filed a Motion to Strike Plaintiff's February 24, 2014 Surreply (Doc. No. 32). The court terminates that Motion as moot.

[3] For the purpose of considering the defendant's Motion to Dismiss, the court assumes the truth of the well-pleaded facts asserted in the Complaint (Doc. No. 1).

1

aide for Odd Fellows, a nursing home in Groton, Connecticut.  See Complaint at 11, 20.  In total, she had worked as a nurse's aide for more than twenty years when the incidents giving rise to the present lawsuit occurred.  Id. at 20.

McKibben was good friends with another nurse's aide named Angela Renzullo.[4] They "talked . . . about everything [, and even] hugged each other every day coming in to work."  Id.  McKibben notes that rumors went around work that she was gay, although she does not make clear whether these rumors were related to whether her friendship with Renzullo was something else.  Id. at 3.

In October 2009, McKibben witnessed Renzullo abuse a male patient.  Id. at 11, 20.  Specifically, she saw Renzullo "slap" him "very hard in the face five times to get him to eat . . . and then poured cold water over his head."  Id. at 20.  McKibben had seen Renzullo be verbally and physically abusive towards patients in the past, but this time she resolved to act.  Id.  She did so even though two other friends who worked with her told her that other employees had been threatened with termination for reporting abuse.  Id.

With one of those two friends by her side for moral support, McKibben went to her supervisor, Director of Nursing Deborah Morgan on October 30, 2009, "immediately . . . when the abuse occurred."  Id. at 11, 20; Exh. A at 5 to Plaintiff's Memorandum in Opposition to Defendant Odd Fellows Healthcare Motion to Dismiss ("Pltf.'s Mem.") (Doc. No. 27 at 10).  She told Morgan about the abuse that she had seen.  Complaint at 20.  Morgan responded that "this looks really bad for [Odd Fellows]."  Id. at 21.

---

[4] The Complaint refers to Renzullo as "Angie Renzula," but other documents indicate that the proper name for this individual is Angela Renzullo.  See, e.g., Exhibits to Memorandum in Opposition to

Another supervisor, Ms. Defelson, "tried to get [her] to change what [she] saw," asking, "are you sure it wasn't a gentle slap on the face[?]"  Id.  McKibben refused to change her account.  Id.

Odd Fellows' initial response was to fire Renzullo and suspend McKibben for four days for not reporting the patient abuse quickly enough.  Id.  On October 31, at Morgan's instruction, McKibben wrote up a statement of the abuse she had witnessed. Id.  At some point later, Morgan read the statement to Renzullo, who then realized that McKibben had reported her.  Id.

In short order, McKibben was mysteriously accused of sexual harassment, although it is not clear whom she was supposed to have harassed or who reported her. By one account in the Complaint, later the same day that Renzullo realized McKibben had reported her, Renzullo told Odd Fellows that McKibben had sexually harassed her; she did so intending that McKibben would be fired.  Id. at 20–21.  By another account, the one who reported her was Eunice Macato, one of the two friends with whom she had spoken for support before reporting Renzullo's abuse.  See id. at 11.  Either way, the reports of McKibben's sexual harassment were entirely without merit.  Id.

At the time of these incidents, Odd Fellows had procedures to which it was to adhere before it would take any adverse action against an employee on account of sexual harassment accusations.  Id. 12–15.  These procedures included a ladder of disciplinary actions of increasing severity, a requirement that complaints be made within a period of 10 days from any alleged incident, and a provision for formal investigation after Odd Fellows received written statements from both the accuser and the accused.

---

Defendant Odd Fellows Healthcare Motion to Dismiss (Doc. No. 27) at 6, 9, 10, 26, 34.

Id. Odd Fellows violated these procedures not only by relying on Renzullo's belated allegations to take action against McKibben, but also by failing to follow its ladder of discipline and by disallowing McKibben the opportunity to defend herself as provided for in its policies. Id. at 14. 21. Instead, it simply instructed McKibben to meet with Morgan and Defelson on November 6; when she showed up, McKibben's supervisors told her they were firing her for sexual harassment. Id. at 11 (stating that administrator James Molloy was the one who delivered the accusation and fired her), 21 (stating that Morgan and Defelson did the accusing and firing). They "never told [her any]thing else [n]or g[ave] her a chance to refute these allegation[s]." Id. at 21. Instead, when she tried to rebut the accusation, Morgan "called [her] a liar to [her] face." Id.

Odd Fellows restored Renzullo's employment and covered up the abuse she committed, although around two years later it later fired her for other patient abuse. Id.

## II.   STANDARD OF REVIEW

A court reviewing a motion to dismiss under Rule 12(b)(6) takes all well-pleaded "factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor." Warren v. Colvin, 744 F.3d 841, 843 (2d Cir. 2014). Dismissal of a claim is appropriate if, despite this favorable reading, the complaint fails to allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). The requirement to allege "facts" means that "bald assertions" and "merely conclusory allegations" do not suffice. Jackson v. Cnty. of Rockland, 450 F. App'x 15, 19 (2d Cir. 2011); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is "plausible on its face" if the facts that the plaintiff pleads "allow[ ] the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Iqbal, 556 U.S. at 678.   That is, the complaint must raise "more than a sheer possibility that a defendant has acted unlawfully." Id. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

"'Where, as here, the complaint was filed pro se, it must be construed liberally to raise the strongest arguments it suggests. Nonetheless, a pro se complaint must state a plausible claim for relief.'" Nielsen v. Rabin, 746 F.3 58, 63 (2d Cir. 2014) (quoting Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013)).

### III.   DISCUSSION

McKibben's Complaint purports to state two claims under Title VII and a variety of claims under Connecticut law. The Title VII claims are for unlawful discrimination on the basis of the plaintiff's membership in a protected class and for unlawful retaliation for protected activity.   The court treats McKibben's two putative Title VII claims in turn and determines that the plaintiff fails to state a claim on either theory.   Finding no reason to retain jurisdiction over McKibben's supplemental state-law claims, the court concludes that it is appropriate to dismiss these remaining claims.

    A.    <u>Discrimination on the basis of a class protected under Title VII</u>

McKibben seeks to bring a claim for discrimination on the basis of her membership in a Title VII "protected class."   She can establish such a claim by alleging "1) that [s]he belonged to a protected class; 2) that [s]he was qualified for the position [s]he held; 3) that [s]he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of

discriminatory intent."  Feingold v. N.Y., 366 F.3d 138, 152 (2d Cir. 2004).

As the defendant points out, however, McKibben does not bring a claim as a member of a protected class.  See Memorandum in Support of Defendant Odd Fellows Healthcare's Motion to Dismiss the Complaint ("Def.'s Mem.") (Doc. No. 23) at 5–6. McKibben alleges that she was subjected to discrimination on the basis of her perceived sexual orientation: rumors around work were that she was gay, and she alleges that she was fired based on discriminatory animus against her based on her being perceived as gay.  See Complaint at 3.   However, "Title VII does not prohibit harassment or discrimination because of sexual orientation."  Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000).

This is not to say that individuals cannot bring claims under Title VII for discrimination related in one way or another to their sexual orientation.   For instance, as the Second Circuit explained at length in Dawson v. Bumble & Bumble, when a plaintiff alleges that a defendant has discriminated against her because of her failure to conform to gender stereotypes, i.e., because of her membership in the class of "individuals who fail or refuse to comply with socially accepted gender roles," she satisfactorily alleges the first element of a Title VII discrimination claim.   398 F.3d 211, 217–223 (2d Cir. 2005).

However, McKibben does not begin to state a claim of this kind here.   She merely makes bald assertions that individuals at her place of employment spread rumors about her sexuality and then states in conclusory fashion that she was fired because of her perceived sexual orientation.   Complaint at 3.   As the Second Circuit stated in a similar case:

6

> We do not have sufficient allegations before us to decide Simonton's claims based on stereotyping because we have no basis in the record to surmise that Simonton behaved in a stereotypically feminine manner and that the harassment he endured was, in fact, based on his non-conformity with gender norms instead of his sexual orientation.

Simonton v. Runyon, 232 F.3d 33, 38 (2d Cir. 2000) (as quoted and discussed in Dawson, 398 F.3d at 217–219).

She makes no reference to any perception that she failed to conform to gender expectations, nor is the court, when it reads the Complaint in the most favorable possible light, able to detect any such theory.   Accordingly, the court dismisses with prejudice this Title VII discrimination claim.

### B. Retaliation for activity protected under Title VII

McKibben also raises a Title VII retaliation claim.   "The elements of a claim of retaliation under Title VII are: (1) that plaintiff engaged in protected activity under Title VII, (2) that the employer was aware of the protected activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action."   Malacarne v. City Univ. of N.Y., 289 Fed. App'x 446, 447 (2d Cir. 2008) (summary order).

The defendant argues that McKibben fails to state a Title VII retaliation claim because the retaliation that she alleges is not predicated on activity that Title VII protects.   Def.'s Mem. at 6–7.   The court agrees: McKibben argues that Odd Fellows fired her in retaliation for reporting resident abuse, Complaint at 3, but this activity does not constitute "opposi[tion to] an employment practice made unlawful by Title VII." McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001).   While, as the defendant appears to concede, McKibben's activity was required under Connecticut

7

law, see Def.'s Mem. at 8; Conn. Gen. Stat. §§ 17b-407, 17b-451, Title VII does not protect it, so this court dismisses with prejudice this second Title VII claim.

\* \* \*

McKibben's remaining claims arise under state law. "[I]f a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" Brzak v. United Nations, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008)); see also 28 U.S.C. § 1367(c)(3). Accordingly, the court dismisses without prejudice the remaining claims.

The defendant has made several arguments that certain of McKibben's claims are time-barred. This court takes no position on these issues. It notes, however, that McKibben's "failure of suit" (i.e., suing in a court without subject-matter jurisdiction) appears to be "accidental" within the meaning of Section 52–592(a) of the Connecticut General Statutes. See Peabody N.E., Inc. v. Dep't of Transp., 250 Conn. 105, 116 (1999). Specfically, McKibben thought it was appropriate to bring her state-law claims in this federal court, but was incorrect because, by reason of her failure to state any federal claim, this court lacks supplemental jurisdiction to hear her state-law claims. Because of McKibben's "accidental failure of suit," it appears that she remains free, if her claims would not have been time-barred in this federal suit, to pursue these claims in a court of competent jurisdiction within one year of this Ruling's entry. See id. at 117–18.

**IV.   CONCLUSION**

The defendant's Motion to Dismiss (Doc. No. 22) is hereby **GRANTED**. The plaintiff's Title VII claims are **DISMISSED WITH PREJUDICE**. All other claims arising

in whole or in part from the facts alleged in the Complaint are **DISMISSED WITHOUT PREJUDICE** for the plaintiff to seek to bring them in another court.   The defendant's Motion to Strike (Doc. No. 32) is **TERMINATED AS MOOT**.   The court allows the plaintiff leave to replead her claims by filing an amended complaint by August 7, 2014.

**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of July, 2014.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge